Raymond McDONALD, Appellant,

v.

R. M. WATKINS, Appellee.

No. 16281.

Court of Civil Appeals of Texas.

Fort Worth.

Jan. 19, 1962.

Orr & Orr, and Joe F. Orr, Fort Worth, for appellant.

Spurlock, Schattman & Jacobs, and Kenneth M. Cole, Jr., Fort Worth, for appellee.

MASSEY, Chief Justice.

Suit was by R. M. Watkins as plaintiff against Raymond McDonald on sworn account. Additionally, suit was for damages for breach of the same contract under which the course of dealing gave rise to the action on account. Judgment was for the plaintiff and defendant appealed.

Judgment reformed and affirmed in so far as it was based upon the action in account. Judgment reversed and rendered in so far as it awarded damages for breach of contract.

Watkins was a farmer who occasionally raised chickens. McDonald was in the business of purchasing eggs, hatching them, and selling baby chicks. There was a certain breed of chickens which would grow into desirable birds for meat purposes. The parties contracted whereby McDonald sold some two thousand baby chicks to Watkins, at the same time agreeing to take all the eggs produced from them for an eight month period, said period was to date from the time the chicks matured and began laying eggs of satisfactory size and character. McDonald further agreed to pay Watkins the price of 60¢ per dozen for said eggs, a departure from the usual contract McDonald made with producers. He ordinarily "pegged" the price to be paid at the time of delivery of hatching eggs upon the current market price of baby chicks. There was nothing provided by the terms of the parties' contract which prescribed the time for McDonald's paying Watkins the agreed price of 60¢ per dozen.

It developed during the trial that McDonald considered it proper to pay Watkins on the basis of the current market price of eggs delivered (not to exceed 60¢ per

dozen) at the time Watkins made each delivery, with accounting to be made at the end of the eight month contractual period. Watkins considered that McDonald should pay upon delivery for eggs accepted at the agreed 60¢ price. In any event McDonald only paid the current market price as of the time of each delivery, and Watkins began keeping account of the number of eggs delivered, the amount paid per dozen therefor, and the arrears between the amount so paid and the calculable figure at 60¢ per dozen. The price paid upon delivery, undoubtedly based upon the current market, never amounted to as much as 60¢ per dozen.

Shortly before date of September 12, 1959, Watkins had a conversation with Mc-Donald in which he told McDonald that he was in financial straits. He wanted McDonald to pay him the balance owing on the egg transaction under the 60¢ per dozen computation. McDonald advised him that he could not then pay him because the price of chicks was down. Evidently Watkins could not obtain a commitment as to when the balance owing would be paid. He told McDonald that he could not continue deliveries with payments as were being made by McDonald because he felt he was losing money. McDonald told him to "do whatever you want to with the chickens", and to "sell them or do whatever you want to". Accordingly, and having a prospective purchaser, Watkins sold his flock on or about date of September 12, 1959. No eggs were delivered by Watkins to McDonald after the flock was sold. Both Watkins and McDonald knew that there would be no more deliveries under the contract after sale of the flock.

Watkins continued in his insistence that McDonald pay him the balance owing according to a price of 60¢ per dozen for the eggs delivered. He brought suit and obtained judgment awarding such to him, plus attorney's fees. Judgment also assessed damages against McDonald for breach of contract.

■ By certain points presented on appeal McDonald attacks the propriety of the judgment in respect to the indebtedness and the attorney's fees. He attacks the propriety of attorney's fees allowed to Watkins by the judgment in this case upon the theory that the liability of McDonald to Watkins, if any, was based upon special contract and not upon a "sworn account" within the meaning and intent of Vernon's Annotated Civil Statutes, Art. 2226, "Attorney's fees". Watkins had plead his case as provided by Texas Rules of Civil Procedure 185, "Suit on Sworn Account".

In support of his contention McDonald cites language from the leading case of Meaders v. Biskamp, 1958, 159 Tex. 79, 316 S.W.2d 75. That case does not define the term "account", within the contemplation of Art. 2226, but cites the case of McCamant v. Batsell, 1883, 59 Tex. 363, in which may be found language which does do so and which distinguishes an "account" from a "special contract". It is necessary to examine the entire opinion beginning with the premise that there must be some kind of contractual relation between the parties, else there would be no sale, purchase, or transfer of title to personal property and creation thereby of the debtor-creditor relationship of the parties. The 1883 court says that an open account results when some one or more elements of the contractual agreement between the parties remains open, that is, remains to be ascertained, whereas in a special contract situation *all* the terms of the contractual agreement are fixed and certain. We have concluded that the circumstances of the instant case establish its character as a suit on open account for indebtedness thereunder accrued to date of September 12, 1959.

The material element of the contract by reason of which the transaction was one of "account" was the absence of any specification of the time McDonald was obliged to make payment for the eggs delivered. It is true, of course, that on the aforesaid

date Watkins was privileged to make demand for the full payment of the balance owing for the delivery of the eggs, but McDonald was not obliged by any specific agreement on his part to make payment at such time. The want of any requirement of the contract that he do so, coupled with the antecedent course of dealing by the parties under the preliminary agreement by which an account was opened, engrafted the character of "open account" upon the entire transaction. When Watkins swore under oath and under the provisions of T. R. C. P. 185 that his account was true and just, the open account became a verified open account, or, to use the terminology of the Rule and Art. 2226, a "sworn account".

The only attack upon the propriety of the allowance of attorney's fees was based upon the want of qualification under the statute as an account. The attack must fail because it was an "account" upon which the suit was based.

In the evidence, wherein the matters relative to the contract and transaction between the parties were fully developed, McDonald agreed that his obligation was properly calculable at the figure of $1,712.00, if and in the event he was not to be relieved of liability therefor because of Watkins' failure to deliver eggs to him for the full contractual period of eight months rather than for the term, less than that number of months, up until Watkins sold his flock of chickens and ceased to deliver the eggs produced by such flock. Essentially it is McDonald's contention that he actually paid the going market price for the eggs delivered to him by Watkins, making payment in said amount at the time each delivery was made by Watkins, and deferring any additional payment (to make up the full contract price of 60¢ per dozen) until the end of the eight month period. McDonald says that he would have been bound to have delivered compensation to Watkins, as of the end of such eight month period, sufficient to make his payment to Watkins total that amount which would be calculable by multiplying the number of dozens of eggs by 60¢. However, McDonald claims that since Watkins failed to deliver the eggs for the full period of eight months, choosing instead to sell his flock of chickens and thereby rendering himself unable to make further deliveries, he breached his obligations under the contract. Because thereof, says McDonald, Watkins was not entitled to more than the going market price at time of each delivery, already paid him, and amounting to quantum meruit already received.

McDonald specifically denied ever having consented to Watkins' sale of his flock and resultant inability to make further egg deliveries. By way of answer to a special issue submitted, however, the jury found that McDonald did approve the sale of the flock. Evidence standing undisputed in the record shows that McDonald cooperated with Watkins in making the delivery of his flock to the purchaser thereof, lending him coops whereby they might be transported. In view of such evidence and the aforesaid jury finding there is shown a mutual abandonment of further performance under the contract, which would leave rights of parties already accrued under contract to be determined by its terms. Collinsville Mfg. Co. v. Street, 1917 (Tex.Civ.App., Amarillo), 196 S.W. 284; 13 Tex.Jur.2d, p. 617 "Contracts", § 343 "—Discharge of prior liability where rescission is mutual".

■ Though the case was tried upon the theory of account, Watkins sought to recover damages as for breach of contract under the theory that McDonald was guilty of a breach in failing to pay the price of 60¢ per dozen upon delivery. On jury findings as to damages sustained between September 12, 1959, and the end of the eight month contract period, judgment was entered in Watkins' favor for $720.00, plus exemplary damages of $1.00. McDonald founds a point of error upon the award of damages for breach of contract.

This point of error must be sustained. In view of what has been said relative to the establishment of a mutual rescission of the portion of the contract remaining after September 12, 1959, and concerning the jury finding and evidence relative thereto, it is obvious that McDonald was bound thereby. As McDonald is bound by the principle of mutual rescission, Watkins is likewise bound. Therefore, and in view of the mutual agreement and actions of the parties thereunder, Watkins may not be allowed to impose additional liability upon McDonald under the theory of breach of contract. In so far as the judgment awarded Watkins the sum of $720.00 for breach of contract it must be reversed. The award of $1.00 as exemplary damages, which must find its predicate therefor in the award of damages for breach, must likewise be reversed, although Watkins' counsel conceded on oral argument that said award should be deleted for other reasons. The total amount by which the principal judgment must be reduced, therefore, is in the sum of $721.00.

Interest on the total amount awarded by the judgment was provided to accrue from date of its entry. Such date was February 20, 1961. By a cross-assignment of error Watkins complains because of this and seeks an award of interest as applied to the amount recovered by his suit on sworn account, $1,712.00, from date of January 1, 1960. It is provided by V. A. T. S., Art. 5070, "Legal rate applicable (in the award of interest)", that when there is no specified rate of interest agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all open accounts from the first day of January after the same are made. Therefore, the contention of the cross-point is well taken and the judgment should be reformed so as to provide that interest on said $1,712.00 should date from January 1, 1960.

Judgment on Watkins' action on sworn account is reformed so as to award interest on the sum of $1,712.00 from date of January 1, 1960, with interest on the amount awarded as attorney's fees from date judgment was entered. Judgment awarding Watkins the amount of $721.00 as actual and exemplary damages for breach of contract is reversed and rendered.

Costs of appeal are assessed as one-third against appellee Watkins and two-thirds as against appellant McDonald.